The Chancellor,
before proceeding to deliver his opinion, remarked that an abstract of about forty folio, which he bad-made, contained all the testimony that was material; that, to sift that out, he had been obliged to go through 262 folio. That *147 it should be recollected that unless a judge was satisfied that he had a distinct view of every thing material in the testimony, he could not feel willing to decide a cause; and that the burden of wading through a volume of useless matter should not be imposed.
The Chancello».
The question in this case is, whether the securities which have been inventoried, appraised and taken by the executors of Hope Haines as belonging to her estate, (other than those which she held in her individual name,) belong to the trusts created by the will of Hope Cowperthwaite, or belong to the estate of Hope Haines, and are to be disposed of under her will. If the disposition of these securities was the same under both wills, it would probably be of no great importance which set of trustees should have the charge of them. But the disposition of the different wills is different; and the question involved affects substantial interests of opposing claimants to these securities. The cestuis que trust under the different wills are different; not altogether so, indeed, but sufficiently so to make it a question between substantial adverse claims. These securities belong to the trusts under Hope Cowportliwaite’s will, unless something has been done, conformably, in the judgment of a court of equity, to the provisions of that will, withdrawing them from those trusts and making them the property of Hope Haines, discharged from those trusts. The oar is in the hands of the executors of the will of Hope Haines; and they have voluntarily taken it.
(The Chancellor here stated the character of the securities, and classified them.)
Hope Cowperthwaite, the first testatrix, left five children, being children by her first husband, Lippincott, namely, one son, Wallace Lippincott, and four daughters, Martha Woolston, Rebecca Zilley, Hope Ilaines and Hannah Lippincott. She gives her son Wallace only a small sum, he having been provided for in her life time.
.After certain bequests, she divides her personal estate into four parts, and bequeaths one-fourth to trustees for each daughter, with certain provisions and limitations in reference thereto. *148 Wallace Lippincott and Hope Haines are by the will appointed the trustees of the Martha Woolston fourth. By the will and codicil Hope Haines, Hannah Lippincott and A quila S. Ridge-way are the trustees of the Rebecca Zilley fourth. Wallace Lippincott and Aquila S. Ridgeway were appointed the trustees of the Hope Haines fourth; and also of the Hannah Lippincott fourth: and on the death of Wallace Lippincott, Aquila S. Ridgeway became the sole surviving trustee of Hope Haines’s fourth and of the Hannah Lippincott fourth; and by the death of Hope Haines, Hannah Lippincott and Aquila S. Ridgeway became the surviving trustees of the Rebecca Zilley fourth. Hannah Lippincott, Hope Haines and Aquila S. Ridgeway were appointed executors of the will and codicils; and since the death of Hope Haines, Hannah Lippincott and Aquila S. Ridgeway are the surviving executors.
The trusts of the different fourths are of the same general character.
The trust in reference to the Hope Haines fourth is, in substance, as follows : — This fourth is bequeathed to Wallace Lippincott, since deceased, and Aquila S. Ridgeway and to the survivor of them, in trust to place the same at interest, and to pay the interest arising thereon, yearly, to Hope Haines so long as she shall live; and also in trust to pay to Hope Haines so much of the principal as she shall, from time to time, by writing under her hand, attested by two credible witnesses, require of the said trustees; and if she shall leave children living at her death, or descendants of children, then that what shall remain undisposed of, of the said fourth, with its accumulated interest, shall belong to and vest in her children, to be paid to them at twenty-one, respectively; the issue of any deceased child to stand in the place of the deceased parent; but if she die, not leaving any child or descendant of any child living at her death, then that the trustees pay what may remain of this fourth undisposed of at the time of her death, with its accumulated interest, unto such of her brothers or sisters or their children and in such proportions as she, the said Hope Haines, shall by will or writing in nature thereof, signed by her hand and attested by two credible witnesses, direct and appoint; she, the said Hope, in such case, *149 to have power to dispose of the same among her brothers and sisters and their children, in such proportions as she may think fit, but to no other person or persons whomsoever; and if she die, not leaving any child living at her death, nor descendant of such child, and without having made such appointment, then that the said trustees pay what shall remain undisposed of, as aforesaid, of this fourth, unto the brothers and sisters of the said Hope, in equal proportions, (the shares of any sisters that may then be married to he paid to their trustees, for their separate use, free from their husband’s control.) The children of any deceased brother or sister to stand in the place of his, her or their parent.
On the 25th June, 1889, there was an ascertainment of the amount of the estate. It is called a settlement. The exhibits, I think, show that it was intended as a settlement of the executors’ accounts; and it is to be considered, for the purposes of this case, in the same light as a settlement in the orphans’ court would he.
Hope Haines died leaving no child or descendant of any child.
The bill is filed by Hannah Lippincott, Aquila S. Ridgeway and Rebecca Zilley; Hannah and Aquila claiming to be surviving trustees of the Rebecca Zilley fourth; Aquila claiming to be the sole surviving trustee of the Hope Haines and Hannah Lippincott fourths; and Rebecca Zilley being a cestui que trust of the fourth bequeathed in trust for her &c. The object of the bill is, to recover from the executors of Hopo Haines the securities inventoried and taken by them as belonging to the estate of Hope Haines, other than those which stand in her own name.
As to the Hope Haines fourth, the first question is, did Hope Haines, in her life time, require the said trustees to pay to her any part of the principal of this fourth, in the manner prescribed by the will for that purpose, or in any manner which should be considered in equity as equivalent thereto.
It is contended on the part of the defendants, that the settlement of the estate by the executors, the assignments by Aquila, one of the executors, to Hannah and Hope, the other two executors, and the exhibit O. and the other exhibits in the cause, *150 should he considered as amounting, in effect, to a requirement by Hope Haines inher'life time, on her trustee, Aquila S. Ridgway, to pay to her the principal of the Hope Haines fourth.
As to the settlement, it was necessary or proper, in order to ascertain the amount of the estate which would be subject to trusts. It seems to have been in lieu of a settlement by the executors in the orphan’s court. As to the assignments by Aquila, they were assignments by one of three executors to the other two, of all his interest in the securities so assigned. As to exhibit 0., it does not seem to me to furnish sufficient evidence that Hope intended by it to extinguish the trust as to the Hope Haines fourth; .and, as has been observed before, the burthen is on the defendants to show enough to enable the court to affirm that such was her intention. The fact that she did not adopt the mode prescribed in the will for doing it, is certainly to be considered as opposed, more or less, to the idea that she intended to do so. If she had so intended, she had only to declare that intention to the trustee, by writing under hand attested by two witnesses. When she could do it by so plain and easy a mode, a mode that would have been subject to no misapprehension, would so careful a woman, scrupulously particular, according to the-accounts we have of her, be likely to be satisfied with any other mode, or, at any rate, with one so equivocal in its character as that from which the counsel for the defendants ask us to infer such intention on her part 1
Again, exhibit 0., after reciting that.Aquila, since the death of Wallace Lippincott, is the sole surviving trustee of the Hope Haines fourth, and of the Hannah Lippincott fourth, expressly declares that “he is to continue our trustee.” All the securities belonging to the trust had remained in the hands of Hope and Hannah, two of the executors of the will of Hope Cowperthwaite, from: the time of her death, in 1829, up to the said settlement and the date of this exhibit, June 1839; Aquila, the other executor, consenting to it.
After á-. careful examination of the testimony, and exhibits in the cause, I do not feel .willing-to-affirm that what was done on the 25th-June, 1839, was intended by Hope Haines as an execution of- the power given'her to .withdraw the principal money *151 from tlie trust.
If it was intended by her to do something, on that day, in or towards, or as equivalent to the execution of the power, we must suppose that such intention would have been communicated to her counsel who drew the writings ; and it appears to me to be beyond all credence that counsel, having the idea of such intention on her part in his mind, could have drawn so many writings in reference to the different fourths, and avoided any expression of such intention. .But there is not only an entire absence of any such expression; but, as if for the purpose of excluding a conclusion that she intended to do so, a clause is inserted in exhibit O. expressly declaring that Aquila is to remain a trustee. When the meaning of a party’s acts is so equivocal and difficult to be understood, I see no reason for rejecting Ins express declaration of what ho does mean. But if this declaration is to be considered as not conclusive, it is certainly entitled to weight in examining the case with a view to ascertain the intention of Hope Haines ; aud 1 think it may be safely said, that nothing stronger than conjecture can be reached, in opposition to this declaration. How are we to apply principles, where we have only conjectures in place of established facts ?
The court may aid a defective execution of a power; but will not supply the execution where none has been attempted or intended. It will not do that for a party which he does not think fit to do for himself. 1 Story’s Eq. Jur. sec. 170.
The only safe principle, as it seems to me, on which this cause can be decided, is this : Where the circumstances are so equivocal as to leave the mind in doubt whether an execution of the power was at all intended, the court should not interpose. An intention to execute the power should clearly appear. 1 Story sec. 172.
I will not guess on either side in the case; either that Hope Haines intended to withdraw the principal from the trust; or that she intended that the yearly interest received by her was to be added to the principal and subjected to the trust. The interest was to bo paid to her by her trustee, yearly, without any demand ; and when she received, it, she received it as hers absolutely, not subject to any trust. It is not easy to perceive how *152 she could, after receiving the interest, add it to the trust fund. At all events something affirmative would he necessary ; something equivalent to declining to receive the interest from her trustee and leaving it to accumulate in his hands.
As to the question, then, whether Hope Haines did any thing in her life time equivalent to requiring her trustee, conformably to the will of Hope Cowperthwaite, deceased, to pay her the principal of this fourth, to be her own, free from the trust, I am of opinion that there is no sufficient evidence that she did so.
As to the interest of this fourth, I am of opinion that, inasmuch as it was received by her, it is to be considered in the same light as if it had been paid to her by her trustee; and that there is no sufficient ground for holding that it became a part of the trust fund after being received by her.
It is difficult to perceive how the words “with its accumulated interest,” used in the will, can apply to the interest which should be actually paid, yearly, to the cestui que trust, for her use free from any trust.
As to the will of Hope Haines, it cannot affect the right to the custody of the papers belonging to the trust fund. The will of Hope Cowperthwaite provides that if Hope Haines die without leaving any child, or descendant of any child, then that the trustees of the Hope Haines fourth pay what may remain undisposed of of this fourth unto such of her brothers or sisters, or their children, as she shall by will direct. Even if the will of Hope Haines, therefore, can be considered as an appointment in favor of the persons named in the residuary clause thereof, the trustee under Hope Cowperthwaite’s will would be the person to receive the money or these trust securities and pay it to the appointees.
Whether the persons named in the residuary clause of Hope Haines’s will are entitled to this fourth is a question which it would not be proper now to decide.
As to the commissions claimed by Hope Haines, she was not entitled to commissions for investing and managing the fourth over which she had the power of appointment; and, it seems to me, I cannot act, in this suit, in reference to commissions to the executors of Hope Cowperthwaite’s will.
*153 Hannah Lippincott is surviving obligee of the securities taken to her and Hope Haines; and it is claimed that she is entitled to the possession of them. I think this is so; and for this reason; the surviving co-obligee is entitled to half the monies recovered on the securities to oblige him to divide the securities, in amount, would subject him to the risk that some retained by him might prove worthless.
An order of reference will be made in accordance with the foregoing view.
Order accordingly.